## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN LUNG ASSOCIATION<br>1301 Pennsylvania Avenue, NW, Suite 800<br>Washington, DC 20004,<br><br>ENVIRONMENTAL DEFENSE FUND<br>257 Park Avenue South, 17th Floor<br>New York, NY 10010,<br><br>CLEAN AIR COUNCIL,<br>Suite 300, 135 South 19th Street<br>Philadelphia, PA 19103, and<br><br>ENVIRONMENT AND HUMAN HEALTH,<br>INC.<br>1191 Ridge Road<br>North Haven, CT 06473,<br><br>Plaintiffs,<br><br>v.<br><br>REGINA MCCARTHY, Administrator, United<br>States Environmental Protection Agency, in her<br>official capacity<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, NW<br>Washington, DC 20460,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT FOR<br>DECLARATORY AND INJUNCTIVE<br>RELIEF** |

## INTRODUCTION

1.      Plaintiffs American Lung Association, Environmental Defense Fund, Clean Air Council,

and Environment and Human Health, Inc. bring this action pursuant to the Clean Air Act (the

"Act"), 42 U.S.C. §§ 7411, 7604(a)(2), to compel Defendant Regina McCarthy, in her official

capacity as Administrator of the United States Environmental Protection Agency ("EPA"), to

comply with her nondiscretionary duty under section 111(b)(1)(B) of the Act to review and

revise, as appropriate, the new source performance standards for new residential wood heaters.

42 U.S.C. § 7411(b)(1)(B).  This category of sources includes high-emitting stationary wood

stoves, furnaces, and boilers discharging large volumes of wood smoke that harms human health,

adversely impacts property values, and is a significant source of dangerous particulate pollution

despite the wide availability of cleaner and highly cost-effective technologies.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2) (citizen

suits for failure to perform a nondiscretionary duty required by the Clean Air Act) and 28 U.S.C.

§§ 1331 and 1361.  The relief requested herein by Plaintiffs is authorized under 42 U.S.C. § 7604

and 28 U.S.C. §§ 2201, 2202, and 1361.

3.      By certified letter to EPA Administrator Regina McCarthy posted on August 1, 2013,

Plaintiffs gave notice of this action as required by section 304(b)(2) of the Clean Air Act, 42

U.S.C. § 7604(b)(2), and 40 C.F.R. Part 54.

4.      More than 60 days have passed since EPA received the notice letter from Plaintiffs, but

EPA has not remedied the violations alleged in the notice letter and in this Complaint.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(e) because Defendant EPA

Administrator Regina McCarthy has her principal office here and a substantial part of the events

or omissions giving rise to the claims occurred here.

## PARTIES

6.      Plaintiff American Lung Association is a national voluntary health organization dedicated

to saving lives by improving lung health and preventing lung disease.  Core to that mission is the

Lung Association's commitment to protect the public from unhealthy air pollution.  The Lung Association acts to defend and enforce the Clean Air Act and works to ensure that EPA establishes protective standards to reduce air pollution so that all Americans can have air that is safe and healthy to breathe.  Now in its second century, the Lung Association pursues its mission through research, education and advocacy.

7.      Plaintiff Environmental Defense Fund ("EDF") is a national membership organization with over 300,000 members residing throughout the United States.  EDF works to link science, economics, and law to create innovative, equitable, and cost-effective solutions to the most urgent environmental problems.  EDF is dedicated to carrying out the interests of its members in protecting and enhancing the quality of the human and natural environment by, among other things, advocating the deployment of effective pollution control technologies, the design of national policies to reduce air pollution, the use of adequate information and rigorous science in governmental decisions affecting the environment, and promoting the availability of sound public information regarding the state of human health and the environment, including the impacts and extent of air pollution.  Protecting public health and the environment from harmful airborne pollutants is a core organizational mission, and EDF regularly participates in regulatory and judicial proceedings on air pollution policy at the federal and state levels.

8.      Plaintiff Clean Air Council is dedicated to protecting the right to breathe clean air and has fought for more than 40 years to improve air quality across Pennsylvania. On behalf of its more than 8,000 members in the mid-Atlantic region, the Council works through public education, community advocacy, and government oversight to ensure the enforcement of environmental laws.  Reducing air emissions from wood heaters by ensuring the most protective standards are adhered to and the best pollution control technology is applied is an organizational priority for

the Council because of the rapidly increasing use of these systems in the mid-Atlantic and the impact of their emissions on the Council's members.

9.      Plaintiff Environment and Human Health, Inc. ("EHHI") is a non-profit organization headquartered in Connecticut and composed of physicians, public health professionals and policy experts dedicated to protecting human health from environmental harms.  EHHI works to communicate information about environmental health risks to those exposed and to public and private officials, thereby empowering individuals and groups to take control over the quality of their environment and protect themselves and their families, and to promote policies in all sectors that ensure the protection of human and environmental health.  EHHI has published reports on the dangers of wood smoke and has advocated at all levels of government for the control of air pollution from wood heaters.

10.     Plaintiffs are persons within the meaning of Clean Air Act sections 302(e) and 304(a), who bring this action on behalf of themselves; Plaintiffs American Lung Association, Environmental Defense Fund, and Clean Air Council also bring this action on behalf of their adversely affected members.  *See* 42 U.S.C. §§ 7604(a) (authorizing "any person" to commence a civil action under that provision), 7602(e) (defining "person" under the Clean Air Act to include an association).

11.     Defendant Regina McCarthy is the Administrator of the U.S. Environmental Protection Agency, and in that capacity is charged with the duty to fulfill each of the responsibilities delegated to her, and to fulfill the objectives of the Clean Air Act and take all regulatory actions required therein.  She is sued in her official capacity.

## STATUTORY AND REGULATORY BACKGROUND

12.     A central purpose of the Clean Air Act is "to protect and enhance the quality of the

Nation's air resources so as to promote the public health and welfare and the productive capacity

of its population." 42 U.S.C. § 7401(b)(1).  The Act also has a primary goal "to encourage or

otherwise promote reasonable Federal, State, and local governmental actions, consistent with the

provisions of this chapter, for pollution prevention." *Id.* § 7401(c).

13.     To further these objectives, the Act requires the Administrator of EPA to publish a list of

each category of stationary source that "causes, or contributes significantly to, air pollution

which may reasonably be anticipated to endanger public health or welfare." *Id.* § 7411(b)(1)(A);

*see also id.* § 7411(a)(3) (defining "stationary source").

14.     Once the Administrator has listed such a source category, the Administrator must

promulgate federal standards of performance to control emissions from new sources in that

category. *Id.* § 7411(b)(1)(B).

15.     These standards of performance must "reflect[] the degree of emission limitation

achievable through the application of the best system of emission reduction which (taking into

account the cost of achieving such reduction and any nonair quality health and environmental

impact and energy requirements) the Administrator determines has been adequately

demonstrated." *Id.* § 7411(a)(1).  EPA refers to this level of control as reflecting the application

of the "best system of emission reduction."

16.     To ensure that the standards of performance continue to reflect the best system of

emission reduction, the Clean Air Act requires that the Administrator "shall, at least every 8

years, review and, if appropriate, revise such standards following the procedure required by this

subsection for promulgation of such standards." 42 U.S.C. § 7411(b)(1)(B).

17.     The required determination of whether it is appropriate to revise existing standards, and the standard-setting itself, must be subjected to public notice to "afford interested persons an opportunity for written comment." *Id.* The Act also specifies rulemaking procedures for "the promulgation or revision of any standard of performance under section 7411 of this title." *Id.* § 7607(d)(1)(C); *see id.* § 7607(d)(2)-(10).

18.     As part of the required revision of, or the determination not to revise, any such standard, the Administrator must address whether "implementation and enforcement of any requirement of this chapter indicate that emission limitations and percent reductions beyond those required by the standards promulgated under this section are achieved in practice." *Id.* § 7411(b)(1)(B). If so, the Administrator must "consider the emission limitations and percent reductions achieved in practice" when revising such a standard. *Id.*

19.     The Act permits the Administrator to forego the required review of the standards for a source category only if the Administrator "determines that such review is not appropriate in light of readily available information on the efficacy of such standard." *Id.*

## FACTUAL BACKGROUND

20.     In 1987, EPA made the determination that wood heaters "contribute significantly to air pollution which may reasonably be anticipated to endanger public health and welfare," and added this source category to the list established under 42 U.S.C. § 7411(b)(1)(A). Standards of Performance for New Stationary Sources; Listing of Residential Wood Heaters for Development of New Source Performance Standards, 52 Fed. Reg. 5065, 5065-66 (Feb. 18, 1987) ("1987 Listing Determination").

21.     In its 1987 Listing Determination, EPA found that this source category accounts for "about 15 percent" of particulate matter ("PM") emissions nationwide. 52 Fed. Reg. at 5066.

Moreover, because their use is concentrated in certain parts of the country, EPA found that "[w]ood heaters create significant air quality problems" in such areas.  *Id.*  EPA also noted that "[m]ore than 80 percent of the PM emissions from wood heaters are smaller than 2.5 micrometers and almost all particles are less than 10 micrometers," a size which enables these PM emissions to "penetrate to the tracheo-bronchial and alveolar regions of the lung."  *Id.*  EPA further explained that "[d]eposition in this region of the lung is of concern because the body may take years to remove the particles and repair the damage they cause. Exposure to these small particles can increase coughing and chest discomfort, aggravate cardiovascular diseases, and may increase the adverse health effects of gaseous air pollutants."  *Id.*

22.     EPA also found in its 1987 Listing Determination that this source category emits other harmful pollutants in addition to PM.  For example, EPA noted that wood heaters "emit large quantities" of carbon monoxide.  *Id.*  EPA also observed that "[a] portion of the PM emitted from wood heaters is in the form of polycyclic organic matter (POM), a class of compounds containing carcinogens.  Wood heaters account for most of the POM emitted by stationary sources."  *Id.*  And EPA affirmed that these pollutants are "released at low heights in residential areas," causing "relatively high levels of exposure to human populations."  *Id.*

23.     In 1988, EPA promulgated standards of performance for new wood heaters pursuant to 42 U.S.C. § 7411(b)(1)(B).  *See* Standards of Performance for New Stationary Sources; New Residential Wood Heaters, 53 Fed. Reg. 5860 (Feb. 26, 1988) (codified at 40 C.F.R. Part 60, Subpart AAA).  These standards limit PM emissions from certain types of new wood heaters. *See* 40 C.F.R. § 60.532 (PM standards); *id.* § 60.530(h) (exempting certain types of wood heaters).  Depending on whether a regulated wood heater is equipped with a catalytic filter,

EPA's 1988 standards limit PM emissions to either 4.1 grams per hour ("g/hr") or 7.5 g/hr.  *Id.* §

60.532(b)(1) & (2).

24.     In the 25 years since EPA issued its emission standards, wood smoke pollution has

continued to endanger public health in part due to EPA's failure to undertake needed revisions to

these standards.  High-emitting residential wood stoves, furnaces, and boilers continue to

account for approximately 13% of the nation's PM emissions and 62% of total emissions of

polycyclic aromatic hydrocarbons, according to EPA.  In certain areas of the country, these

sources account for the majority of wintertime PM emissions, and contribute to violations or

threatened violations of health-based air quality standards for PM.  Moreover, EPA's latest

Integrated Science Assessment for Particulate Matter, completed in 2009, reported studies that

specifically found wood smoke associated with an increased risk of cardiovascular mortality, as

well as increased emergency department visits from cardiovascular disease, and respiratory

diseases.  *See* EPA, *Integrated Science Assessment for Particulate Matter* (2009) (EPA Doc. No.

EPA/600/R-08/139F).  Recent scientific literature has also highlighted the variety of toxic and in

some cases potentially carcinogenic pollutants that make up wood smoke, as well as the role of

wood smoke exposure in contributing to childhood asthma, asthma hospitalizations, and

impaired lung function in children.  *See* Luke P. Naeher et al., *Woodsmoke Health Effects: A

Review,* 19 Inhalation Toxicology 67, 83-87 (2007).

25.     Improvements in technology have enabled reductions in PM emissions far below the

levels EPA requires, and as a result, EPA's standards of performance no longer reflect the

application of the best system of emission reduction.  For example, the State of Washington

requires wood stoves, furnaces, and boilers to meet PM emission standards that are 40 percent

more stringent than EPA's standards of performance.  *See* WASH. ADMIN. CODE § 173-433-

100(3) (applying PM standards as low as 2.5 g/hr).  Moreover, EPA's own data shows that many

of these sources far surpass even the Washington standards, achieving PM emission rates of less

than 1 g/hr.  *See* EPA, *List of EPA Certified Wood Stoves* (Aug. 2013), *available at*

http://www.epa.gov/burnwise/woodstoves.html (last visited Oct. 8, 2013).

26.     Another impact of EPA's failure to review the standards of performance for this source

category according to the Act's prescribed schedule is that some types of high-emitting wood

stoves, furnaces, and boilers that are exempt from EPA's standards have gained market share

since 1988 and now account for a significant percentage of new sales and emissions.  For

example, outdoor wood boilers – which are exempt from the current standards of performance –

have grown in popularity since 1988.  *See* New York Office of the Attorney General, *Smoke Gets

in Your Lungs: Outdoor Wood Boilers in New York State* 5 (Mar. 2008).  EPA has found that a

single poorly-controlled outdoor wood boiler can emit enough small particles to cause nearby

PM levels to exceed EPA's health-based ambient air quality standards.  *See* EPA, *Strategies for

Reducing Residential Wood Smoke* (2009) at 6 (EPA Doc. No. EPA-456/B-09-001).  Several

states have now adopted their own standards for outdoor wood boilers, demonstrating the

availability of systems of emission reduction for these wood heaters.  *See*, *e.g.*, VT. CODE R. §

16-3-100:5-204(e)(2)(ii) (applying an 18 g/hr maximum test run standard to certain outdoor

wood boilers).

27.     Plaintiffs have learned that a draft proposed rule to revise the standards of performance

for this source category is currently under review at the White House Office of Management and

Budget.  It is not certain whether, or when, that proposed rule will ultimately be signed by the

Administrator and published for public comment.

**SPECIFIC ALLEGATIONS**

28.      The Clean Air Act mandates that the Administrator "review, and if appropriate, revise" the standards of performance for each category of sources "at least every 8 years."  42 U.S.C. § 7411(b)(1)(B).  The only exception to this requirement is if the Administrator "determines that such review is not appropriate in light of readily available information on the efficacy of such standard."  *Id.*

29.      EPA has neither completed a review of the standards of performance for new wood heaters, nor promulgated a determination that such review is not "appropriate in light of readily available information on the efficacy of such standard," as required by 42 U.S.C. § 7411(b)(1)(B) "at least every 8 years," *i.e.*, in 1996, 2004, and 2012.

30.      EPA has also neither finalized a revision of the standards of performance for new wood heaters, nor promulgated a determination that such a revision is not "appropriate," as required by 42 U.S.C. § 7411(b)(1)(B) "at least every 8 years," *i.e.*, in 1996, 2004, and 2012.

31.      Therefore, the Administrator has failed to perform the actions required under section 111(b)(1)(B) of the Clean Air Act, 42 U.S.C. § 7411(b)(1)(B), and such actions are "not discretionary with the Administrator."  42 U.S.C. § 7604(a)(2).

32.      The Administrator's ongoing failure to review and revise the standards of performance for this source category has resulted, is resulting, and will continue to result in higher emissions of air pollutants from new wood heaters than would be permitted if EPA were to complete the required actions.

**PLAINTIFFS' INJURIES**

33.      For the reasons set forth above and below, Plaintiffs and their members have been and will continue to be harmed by the Administrator's failure to act as complained of herein.

34.     Plaintiffs are non-profit organizations whose purposes include protecting public health and the environment from air pollution, including the adverse impacts of emissions from wood stoves, furnaces, and boilers that are within the source category at issue herein.  They pursue these goals through public education, advocacy, and litigation to enforce and strengthen environmental laws and to prevent, reduce, and mitigate air pollution and its adverse effects. Plaintiffs include organizations that analyze and provide their members and the public with information regarding the adverse impacts of air pollution, the potential for robust pollution control technologies, and a variety of other solutions to evaluate, influence, and implement well-designed policies and governmental actions to protect human health and the environment.

35.     The Administrator's ongoing failure to review and revise the standards of performance for wood heaters injures Plaintiffs and their members by depriving them of the benefits that would result from such actions.  Such benefits include reductions in harmful levels of air pollutants and air pollution and the resulting improvements in the members' health, aesthetic, recreational, and economic interests caused by such pollution reductions.

36.     Plaintiffs include organizations that have members who reside, work, travel, and recreate in areas of the United States where they are exposed to unhealthful air pollution from wood stoves, furnaces, and boilers that are within the source category at issue herein.  Such air pollution threatens the health and welfare of those members, as does air pollution from new such devices that are regularly installed in such areas on an ongoing basis.  Those members have experienced and continue to experience or are likely to experience harm to their health, environmental, recreational, aesthetic, and economic interests due to the Administrator's ongoing failure to take the actions required by 42 U.S.C. § 7411 to reduce emissions from new wood stoves, furnaces, and boilers.

37.     Further, the Administrator's failure to act has deprived and continues to deprive Plaintiffs and their members of procedural rights established by the Clean Air Act to protect Plaintiffs' threatened interests.  If this Court orders the Administrator to take the required actions described above, Plaintiffs and their members will be afforded the ability to provide public comments on the Administrator's data, analysis, legal interpretations, and policy considerations and to have EPA issue a public response to those comments.  *See id.* §§ 7411(b)(1)(B), 7607(d).  Among other things, Plaintiffs and their members would publicly advocate for the appropriateness of stronger and more comprehensive standards of performance for wood combustion, and to provide information relevant to the design of those standards.  The Administrator's ongoing failure to act has denied Plaintiffs and their members those rights.

38.     Finally, the Administrator's failure to act as required by 42 U.S.C. § 7411(b)(1)(B) has injured Plaintiffs and their members by depriving them of information (including data, findings, and determinations regarding emissions from the source category at issue herein and relevant pollution control technologies) to which they would have access if EPA had taken the required regulatory actions.   The Clean Air Act grants the public a right to all records, reports, and information that EPA collects.  *See* 42 U.S.C. § 7414(c) (providing limited exceptions).  Plaintiffs have an interest in accessing this information.  For example, Plaintiffs would use the information to carry out their missions by educating their members and/or the public about emissions from wood stoves, furnaces, and boilers and available control technologies to reduce those emissions.

39.     For all of the foregoing reasons, in connection with the allegations in all paragraphs of this complaint, above and below, the failures complained of herein cause Plaintiffs injuries for

which they have no adequate remedy at law.  Granting the requested relief would redress these injuries.

## CLAIMS FOR RELIEF

1.  <u>Violation of Section 111(b)(1)(B) of the Clean Air Act:</u>
<u>Continuing Failure to Perform Nondiscretionary Act or Duty</u>

40.     The allegations of all foregoing paragraphs are hereby incorporated as if set forth fully herein.

41.     The Administrator's failure either to complete a review of the standards of performance for wood heaters, or to issue a determination "that such review is not appropriate in light of readily available information on the efficacy of such standard," in accordance with 42 U.S.C. § 7411(b)(1)(B), constitutes the failure to perform an act or duty that is not discretionary with the Administrator within the meaning of section 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2), which failure is ongoing as of the present time.

42.     The Administrator's failure either to revise the standards of performance for wood heaters, or to issue a determination that such a revision is not "appropriate," in accordance with 42 U.S.C. § 7411(b)(1)(B), constitutes the failure to perform an act or duty that is not discretionary with the Administrator within the meaning of section 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2), which failure is ongoing as of the present time.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Declare that the Administrator's failure either to review or determine not to review the standards of performance for wood heaters, and the Administrator's failure either to revise or determine not to revise the standards of performance for wood heaters as required by Clean Air Act section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), constitutes

the failure of the Administrator to perform an act or duty that is not discretionary within

the meaning of 42 U.S.C. § 7604(a)(2).

(2) Order the Administrator either to complete a review and make all appropriate revisions to

the standards of performance for wood heaters, or to issue a final determination that

completing such a review is not appropriate in light of readily available information on

the efficacy of such standard, in accordance with 42 U.S.C. § 7411(b)(1)(B), pursuant to

an expeditious deadline established by this Court;

(3) Retain jurisdiction to ensure compliance with the Court's decree;

(4) Award Plaintiffs the costs of this action, including attorneys' fees; and,

(5) Grant such other relief as the Court deems just and proper.


DATED:       October 9, 2013

                                        Respectfully Submitted,

                                        /s/ Timothy D. Ballo_____
                                        Timothy D. Ballo
                                        David S. Baron
                                        Earthjustice
                                        1625 Massachusetts Ave., NW
                                        Suite 702
                                        Washington, DC 20036
                                        (202) 667-4500
                                        tballo@earthjustice.org
                                        dbaron@earthjustice.org

                                        Counsel for American Lung Association,
                                        Environmental Defense Fund, Clean Air Council,
                                        and Environment and Human Health, Inc.